**In re Norman C. KIRST, Genevieve Kirst, Debtors.**

**Russel J. LESPERANCE, Plaintiff,**

v.

**Norman C. KIRST, Defendant.**

**Bankruptcy No. 82–02120.
Adv. No. 82–1228.**

United States Bankruptcy Court,
E.D. Wisconsin.

Oct. 18, 1983.

Norman C. Kirst, pro se.

Russel J. Lesperance, pro se.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Russel J. Lesperance ("plaintiff") commenced an action against debtor Norman C. Kirst ("defendant") for denial of the defendant's discharge pursuant to § 727 of the Bankruptcy Code and, alternatively, for a declaration that a portion of defendant's debt to plaintiff be excepted from discharge pursuant to § 523(a)(2)(A) of the Bankruptcy Code.[1]

A trial was held on September 13, 1983 at which time both parties appeared *pro se.* Each party testified and introduced a number of exhibits into evidence. There were no other witnesses.

## FACTUAL BACKGROUND

The parties have known each other since approximately 1959. The business relationship, which is the focal point of this dispute, began in January of 1980 and ended in less than a year.[2] Although there appears to be some effort on the part of plaintiff to deny even the existence of a partnership or joint venture between the parties, claiming instead that defendant was acting only as a "broker for unknown parties" the testimony at the trial, exhibits and the decision of Judge Robert C. McGraw, Circuit Judge for Waukesha County, Wisconsin, in a related case[3] all clearly established that the relationship be-

1. The alleged nondischargeable portion of the debt arises from a claimed fraudulent misuse by defendant of the Wisconsin Telephone Company credit card owned by plaintiff and the Shell Oil Company credit card owned by plaintiff's wife, Virginia Lesperance. Mrs. Lesperance probably should have been joined as a party-plaintiff. However, her omission is academic in view of the decision reached by this Court. The plaintiff stated in Court that he was not seeking to declare as nondischargeable any other sums which may be due and owing to him from the defendant including that portion

consisting of an unpaid contribution to Kirst-Lesperance and Co.

2. The precise time of termination of the business is unclear from the testimony and exhibits. However, it does appear that it ended some time in 1980.

3. *See, Lesperance v. Kirst and Wisconsin Telephone Company,* Waukesha County, Wisconsin, Case No. 80–CV–1641. On November 19, 1982, this court entered an order allowing the state court action to proceed but restraining

tween the parties was that of a partnership or, at the very least, a joint venture known as "Kirst-Lesperance and Co." (hereinafter referred to as "Kirst-Lesperance"). Under the doctrine of collateral estoppel, matters that were litigated in a prior action cannot be relitigated in a different action between the same parties. Since this is precisely what occurred in the state court action before Judge McGraw, plaintiff is now precluded by this doctrine from seeking to once again disprove the existence of a joint venture. *See, In re LaCasse,* 28 B.R. 214 (Bkrtcy.D.Minn.1983); *In re Cerrato,* 31 B.R. 444 (Bkrtcy.S.D.N.Y.1983).

Kirst-Lesperance was formed for the purpose of developing mineral interests, drilling oil and gas wells and developing and operating a petroleum company. It was defendant's function to obtain potential investments, including oil and gas leases. Plaintiff was to obtain financing. Although it appears that some options on certain oil and gas leases in Louisiana, Texas and Oklahoma were obtained, it also appears that these options eventually expired and that Kirst-Lesperance was unsuccessful. While the business arrangement began with extremely optimistic hopes, including a proposed purchase of an eight billion dollar bank in Italy and a shipping fleet in Panama, these ideas, as well as others, never materialized. Eventually, the business relationship ended on a sour note leaving in its path a number of unpaid bills and extremely bitter feelings between the parties.[4]

On June 28, 1982, defendant filed a petition in bankruptcy. Thereafter, plaintiff commenced this adversary proceeding.

## OBJECTION TO DISCHARGE

From the testimony and pleadings, it appears what plaintiff seeks to establish is a

denial of defendant's discharge pursuant to the following provisions of the Bankruptcy Code: 727(a)(3) (failure to keep or preserve books or records); 727(a)(4) (false oath); and 727(a)(5) (failure to explain losses or insolvency). Each of these provisions will be examined in relationship to the evidence submitted.

With respect to § 727(a)(3), a court may, in its discretion, excuse any failure to keep or preserve records if circumstances justify such excuse. Cowans, *Bankruptcy Law and Practice,* § 5.34 (Interim Ed.1983). The Code section itself recognizes that circumstances may justify such failure. In this case, defendant acknowledged that some of his records were missing, but explained that on four separate occasions during one year, he was required to move, and that during the course of packing, unpacking and moving, some records were lost. However, defendant did, in response to plaintiff's request at the trial, produce books and records of the Kirst-Lesperance venture. These included, among other things, the partnership agreement, financial statements and financial projections. In view of the foregoing, the Court does not believe circumstances exist which warrant a denial of defendant's discharge under § 727(a)(3).

The second ground for denial of discharge related to allegations of false oath by defendant under § 727(a)(4). Plaintiff pointed out certain errors in the defendant's statement of affairs. One of these errors established that the period of the partnership between the parties, which had been represented in the schedules as occurring during the period of January,

---

any *in personam* recovery against the debtor-defendant.

**4.** Judge McGraw, in *Lesperance v. Kirst and Wisconsin Telephone Co.,* summed up the situation as follows:

"Candidly, the court is of the opinion that what happened here is that, with all the usual good intentions of joint ventures, Mr. Lesperance and Mr. Kirst started down the yellow brick road to the golden city and unfortu-

nately along the path, they were sidetracked to a degree that their great hopes were damaged and remained unfulfilled."
Another way of viewing the situation is that it is reminiscent of Don Quixote and Sancho Panza encountering windmills in their quest to obtain the impossible dream. Miguel De Cervantes, *The History of Don Quixote De La Mancha* (1605).

1981 through May, 1981, in fact occurred a year earlier. Plaintiff also sought to establish that defendant falsely represented his income earned in 1981. This latter allegation, however, was never clearly proven. Even if both of these allegations had been proven, they do not show any intentional design to defraud by defendant. They appear to be more in the nature of harmless errors resulting from inadvertence on the part of a defendant who prepared his own schedules without any legal assistance. Defendant had nothing to gain by these errors and the plaintiff did not suffer by them. Immaterial representations in a debtor's schedules do not justify a denial of a discharge. *In re Terkel,* 7 B.R. 801 (Bkrtcy.S.D.Fla.1980).

■ The third basis for plaintiff's objection to discharge is predicated upon § 727(a)(5), namely, a failure on the part of the debtor to explain satisfactorily any losses of assets. Considerable emphasis was placed by plaintiff upon a financial statement dated February 23, 1980 of the defendant and signed by him and which reflected substantial assets on his part not set forth in his bankruptcy schedules. The purported major asset omitted from defendant's bankruptcy schedules consisted of brokerage consulting fees allegedly due to defendant and listed in the financial statement in the amount of approximately $420,-000. Defendant explained that this was an inflated financial statement which had been prepared at the behest of plaintiff in an effort to project a favorable financial picture for potential investors in the Kirst-Lesperance venture. Defendant also stated that he had been extremely reluctant to sign it and did so only after considerable prodding by plaintiff. Defendant further testified that plaintiff had referred him to plaintiff's own accountants for assistance in its preparation. Because the testimony is-

sue is unclear and conflicting, it is difficult to establish what in fact occurred. However, the Court recognizes that it is a plaintiff's burden to establish the facts essential to his objection. Rule 407, Rules of Bankruptcy Procedure. The Court believes, therefore, that a denial of discharge on this particular ground requires more definitive proof than was submitted at the trial.

■ This Court is therefore satisfied that there is no sufficient basis in the record to deny discharge to defendant on any of the grounds submitted. As was stated in the case of *In re Schnoll* 31 B.R. 909 (Bkrtcy.E.D.Wis.1983), § 727 must be construed liberally in favor of the debtor. A denial of a discharge to a debtor is a step not to be lightly taken. *In re Terkel,* 7 B.R. 801 (Bkrtcy.S.D.Fla.1980).

## NONDISCHARGEABILITY OF DEBT

Alternatively, plaintiff contends that defendant's obligation to plaintiff arising out of defendant's use of Shell Oil Company and Wisconsin Telephone Company credit cards of plaintiff and his wife, should be declared nondischargeable, pursuant to § 523(a)(2)(A) of the Code.[5] Plaintiff asserts that charges, totalling approximately $1,600 on the Shell Oil Company credit card and $3,127 on the Wisconsin Telephone Company credit card, were incurred by defendant, were unauthorized and, accordingly, were fraudulent within the meaning of § 523(a)(2)(A). In response, defendant claims that most, if not all, of these alleged charges pertained to the Kirst-Lesperance venture and were authorized by plaintiff before being incurred. With respect to any charges which may have been personal and unrelated to the business, defendant states that they were minimal and were made only after obtaining plaintiff's permission. Finally, as an affirmative defense, defendant maintains that plaintiff made extensive

---

**5.** § 523. EXCEPTIONS TO DISCHARGE
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
    (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

use of defendant's automobile for plaintiff's own personal purposes, without any prior authorization from defendant and for which defendant was never reimbursed. According to defendant, such use more than offset the amount allegedly due as a result of defendant's use of the Shell Company and Wisconsin Telephone Company credit cards.

Plaintiff has the burden of establishing by clear and convincing evidence that defendant's use of the credit cards constituted actual fraud involving moral turpitude or intentional wrong by the defendant. 3 *Collier on Bankruptcy* § 523.08 (15th Ed.); *In re Toleikis,* 19 B.R. 944 (Bkrtcy.E.D. Mich.S.D.1982); *In re Griffis,* 29 B.R. 110 (Bkrtcy.D.Vt.1983). In an earlier portion of this decision, this Court noted that the Bankruptcy Code provision dealing with a denial of discharge (§ 727) is construed liberally in favor of the debtor. Similarly, exceptions to the dischargeability of a debt are construed strictly against the creditor and liberally in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). This principle is in accord with one of the basic underlying policies of the Bankruptcy Code of providing the debtor with a fresh start. H.R.Rept. No. 595, 95th Cong., 1st Sess., p. 125 (1977), *U.S.Code Cong. & Admin.News,* 1978, p. 6086.

The Court notes that the only testimony at the trial came from the parties themselves. There were no independent witnesses to corroborate the plaintiff's claim that the credit cards had been used without prior approval. As this Court has previously stated, it is extremely difficult to probe into the inner processes of the defendant's mind in order to establish his intention. *In re Cicero,* 28 B.R. 480, 484 (Bkrtcy.E.D.Wis. 1983). Such intent can only be inferred from the totality of the circumstances and necessarily involves a consideration of the background of the parties and their credibility as witnesses. In this case, the Court has had that opportunity to examine their respective backgrounds and credibility. While each party did have some prior business experience, they both appear to have been surprisingly naive and inexperienced,

at least with respect to this particular venture. This is not a case of one party being at the disadvantage of the other because of his relative lack of experience or sophistication. In addition, the testimony and exhibits reflect that the terms of the business relationship were not clearly defined and were subject to differing interpretations by each party. It is not clear how the parties intended to handle the matter of allocation of expenses, including those at issue in this case, or whether this matter had even been considered at the inception of the business relationship.

This Court is not persuaded, upon the quantum of proof submitted, that the credit card charges had been incurred by defendant without prior authorization of the plaintiff or were unrelated to the Kirst-Lesperance business venture. The testimony on this particular point is in direct conflict and unfortunately, as previously stated, there is no independent testimony to corroborate the versions of either party. Therefore, the evidence in this case with respect to any intent to defraud, when considered in the light most favorable to the debtor, is not clear and convincing and does not warrant a finding of nondischargeability.

## CONCLUSION

Accordingly, under all the facts and circumstances, the evidence has failed to establish a basis for either denying a discharge to the defendant or for declaring the debt due to plaintiff as nondischargeable, and an order shall be entered dismissing the plaintiff's complaint.

This decision shall stand as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.