**In re Robert Wingate DUBIAN, Debtor.**

**Mark STERN, Plaintiff,**

**v.**

**Robert Wingate DUBIAN, Defendant.**

**Bankruptcy No. 86–40630.
Adv. No. 87–4028.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 1, 1987.

Mark D. Stern, pro se.

Jerry P. Katz, Springfield, Mass., for defendant/debtor.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

The plaintiff moves for summary judgment declaring a state court judgment non-dischargeable under § 523(a)(6) of the Bankruptcy Code (11 U.S.C. § 523(a)(6)). The plaintiff obtained the judgment against the debtor for damages caused by the debtor's intentional interference with the plaintiff's contractual relations. He asserts that this state court determination establishes "willful and malicious injury by the debtor" within the meaning of § 523(a)(6) under principles of collateral estoppel, also known as issue preclusion. This presents a case of first impression in this district. The motion also raises the question under traditional summary judgment law of whether there exists a "genuine" issue of material fact in view of the affidavits and counter-affidavits filed in connection with it.

We recite the undisputed facts as disclosed by the pleadings and affidavits. The plaintiff, Mark Stern, is a practicing lawyer. In 1979 he was retained by a few individual members of Teamsters Local 559 (the "Union") who had formed an organization called Teamsters for a Democratic Union ("T.D.U."). The debtor, Robert Wingate Dubian, was a member of T.D.U., but not an officer thereof. The purpose of the plaintiff's retention was to bring suit against the Union in order to secure the right for its members to nominate and vote for candidates of their choice as its officers. The debtor joined in the plaintiff's retention, but stipulated in writing that he was not individually obligated to pay the plaintiff's fee. Other members of T.D.U. agreed to pay up to an aggregate of $3,000 to the plaintiff, plus expenses. They also agreed that the plaintiff would seek payment for all of his services from the Union when and if he was successful in the law suit and obtained a court order against the Union for his fee.

The plaintiff failed to obtain an injunction against a pending Union election at the trial level, and T.D.U. decided to appeal. The parties increased the aggregate fee which members of T.D.U. (excluding the debtor) would be obligated to pay to $6,000 plus expenses, with the additional amount being payable only if the appeal was suc-

cessful. The plaintiff continued his understanding with T.D.U. that he would seek payment for all his services by the Union if he was successful in the suit and obtained a court order against the Union for his fee. An appeal to the Second Circuit achieved a reversal of the district court's denial of a preliminary injunction. T.D.U. informed the plaintiff, however, that it did not wish to pursue the matter any further, and that it was unwilling to post the filing fee necessary to obtain the injunction. This change of heart was caused by the debtor, who convinced T.D.U. to drop the matter. As a result, the plaintiff could not obtain an order against the Union for his fee. It was disclosed at the hearing in this Court that the debtor was later elected president of the Union.

The plaintiff then brought suit in a Massachusetts state court against the debtor and the other members of T.D.U. who had employed him. His claim included counts against all the defendants in both contract and *quantum meruit.* An amended complaint added two counts against the debtor only, one for intentional interference with contractual relations and the other for intentional interference with advantageous relations. After a jury trial, judgment was entered against the debtor on the counts for contract, *quantum meruit* and intentional interference with contractual relations. The debtor then obtained an order for relief in this Court under Chapter 7 of the Bankruptcy Code, and the present adversary proceeding followed. The plaintiff seeks to have declared nondischargeable only the indebtedness represented by the judgment entered on the count for intentional interference with contractual relations.

The plaintiff argues that the state court judgment not only establishes the amount of the indebtedness under principles of *res judicata,* or claim preclusion, but also establishes under principles of collateral estoppel, or issue preclusion, that it is a debt for "willful and malicious injury by the debtor ... to the property" of the plaintiff

within the meaning of § 523(a)(6). The judgment is clearly *res judicata* as to the debtor concerning the *existence* of the indebtedness, because the debtor was a party to the prior proceeding. *Restatement (Second) of Judgments* § 17 (1982).[1] The debtor does not argue otherwise, having scheduled the claim as an admitted debt in the expectation of its discharge. He contends that the judgment has no preclusive effect concerning the *nature* of the indebtedness, so that it is still open to him to contest the application of § 523(a)(6). The plaintiff, on the other hand, concedes, as he must, that the judgment is not *res judicata* as to the nature of the indebtedness for dischargeability purposes. The Supreme Court established this principle in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), where it held that a prior judgment is not *res judicata* in bankruptcy on the question of dischargeability. The Court reasoned that considerations concerning discharge are foreign to the prior proceeding, that there is often little incentive in such proceedings for the parties to litigate factors relevant to bankruptcy discharge, and that giving finality to the prior judgment would undercut Congress's intention under the 1970 amendments to the former Bankruptcy Act to commit dischargeability issues exclusively to the bankruptcy courts. The Court expressly left open, however, the question of whether the prior judgment could have issue preclusive effect in the later bankruptcy dischargeability proceeding. 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.

## I. ISSUE PRECLUSIVE EFFECT OF JUDGMENT

### A. *Appropriateness of Issue Preclusion in Bankruptcy*

■ This Circuit has not yet decided the question of whether a prior judgment can be issue preclusive in bankruptcy dischargeability proceedings. *See Commonwealth v. Hale,* 618 F.2d 143 (1st Cir.1980).

---

1. It should be noted the judgment may not have the same preclusive effect against a trustee in bankruptcy who had no prior opportunity to

litigate the claim. *See* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* 59 Am.Bankr.L.J. 55, 80 (1985).

Most, but not all, of the circuits who have considered the matter have concluded that the prior judgment is issue preclusive on dischargeability provided that traditional tests for preclusion are met. *See Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *Lombard v. Axtens (In re Lombard)*, 739 F.2d 499 (10th Cir.1984); *Smith v. Pitner (In re Pitner)*, 696 F.2d 447 (6th Cir.1982); *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981); *In re Ross*, 602 F.2d 604 (3d Cir. 1979); *Merrill v. Walter E. Heller & Co. (In re Merrill)*, 594 F.2d 1064 (5th Cir. 1979). The Ninth Circuit appears to be the only circuit which denies preclusive effect in bankruptcy for a prior judgment. It regards issue preclusion as inappropriate because of the exclusive jurisdiction of bankruptcy courts to determine dischargeability. The Ninth Circuit gives the judgment only *prima facie* evidentiary effect, so that its force may be rebutted by other evidence. *See Houtman v. Mann (In re Houtman)*, 568 F.2d 651 (9th Cir.1978).

We believe that the general policy considerations which support the principle of issue preclusion in other contexts are equally present in bankruptcy dischargeability proceedings. Furtherance of judicial economy, reliance on judicial decisions, and the final resolution of disputes all favor this Court giving issue preclusive effect to a prior judgment. To do so, moreover, strengthens the relationship between state and federal courts. Nor do we regard issue preclusion as inconsistent with the exclusive jurisdiction of bankruptcy courts to determine the dischargeability of debts. Issue

preclusion is quite different from claim dischargeability preclusion, rejected in *Brown v. Felsen, supra.* A bankruptcy judge, must still adjudicate the legal question of dischargeability in light of all the circumstances before him. And he may do this only after determining whether the factual elements required for dischargeability were actually litigated in the prior case and that resolution of those factual issues was essential to the prior judgment. *See Restatement (Second) of Judgments* § 27 (1982). That a federal court has exclusive jurisdiction over an ultimate legal determination does not mean that the underlying facts are so sacrosanct as to be subject to resolution only by that court. *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1928) (prior state court suit ruling that patent holder held the patent for the benefit of another has preclusive effect on federal patent infringement suit brought by patent holder). A prior judgment of the type involved here merely resolves a traditional state cause of action, rather than purporting to adjudicate a federal cause of action. *Cf. Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184 (2d. Cir.1955), *cert. denied* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (prior state court judgment holding contract invalid as a violation of federal antitrust laws is not entitled to preclusive effect because it is a complete adjudication of federal cause of action). Nor are there present here any of the unusual circumstances which are regarded as exceptions to the general rule favoring issue preclusion.[2]

**2.** *Restatement (Second) of Judgments* § 28 (1982) provides as follows:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context

or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of

## B. *Application of Issue Preclusion*

■ The question remains whether plaintiff's state court judgment for intentional interference with contractual relations involved a determination of "willful and malicious injury" within the meaning of § 523(a)(6) and in accordance with standards governing issue preclusion. We are of the opinion that it did.

### 1. *Intentional Interference as "Willful and Malicious" Injury*

The tort of intentional interference with contractual relations is well established under Massachusetts law. It requires that the tortfeasor know of the contract and that he intentionally and without justification induce a breach thereof. *Anderson v. Moskovitz*, 260 Mass. 523, 157 N.E. 601 (1927); *Wheeler-Stenzel Co. v. American Window Glass Co.*, 202 Mass. 471, 89 N.E. 28 (1909); *Walker v. Cronin*, 107 Mass. 555 (1871). Although many of the Massachusetts decisions refer to malice as an element of the wrong, it is a malice which is presumed in law from the existence of the other elements. *Anderson v. Moskovitz*, 260 Mass. 523, 526, 157 N.E. 601, 603 (1927).

*Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), is the leading decision interpreting the amorphous phrase "willful and malicious" under § 17(a) of the prior Bankruptcy Act. In holding that the debtor's sexual intercourse with the claimant's wife was willful and malicious, the Court rejected the contention that this exception to dischargeability required personal malice toward the individual claimant. It viewed the required malice as being implied by law from a wrongful act which is done intentionally and without just cause. In language which has been frequently quoted, the Court said:

> persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or in-

[W]e think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception. 193 U.S. at 487.

A number of decisions under the prior Act followed the lead of *Tinker v. Colwell*. See, e.g., *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) (intentional conversion of collateral by a stockbroker is willful and malicious); *In re Nance*, 556 F.2d 602 (1st Cir.1977) (expenditure of proceeds constituting creditor's collateral is willful and malicious); *Bennett v. W.T. Grant (In re Bennett)*, 481 F.2d 664 (4th Cir.1973) (delivery of creditor's collateral to another creditor is willful and malicious).

The legislative history to § 523(a)(6) states in part: "Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) [sic], held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." [3] We fail to divine any such intimations in either the language of *Tinker* or in its holding involving sexual intercourse; the adjective "reckless" hardly seems to be an apt description for the conduct in *Tinker*. This legislative history apparently refers to certain decisions, usually involving injuries caused by driving while intoxicated, that regarded *Tinker v. Colwell* as adopting a looser "reckless disregard" standard for "willful." *See, e.g., Den Haerynck v. Thompson*, 228 F.2d 72 (10th Cir.1955); *Harrison v. Donnelly*, 153 F.2d 588 (8th Cir.1946); *Standard v. Keenan (In re Keenan)*, 4 Bankr.Ct.Dec. (CRR) 208 (Bankr.N.D.Ga.1978); *Johnston v. Irwin*

centive to obtain a full and fair adjudication in the initial action.

**3.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d. Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864, 5963, 6320.

*(In re Irwin)*, 2 Bankr.Ct.Dec. (CRR) 783 (Bankr.N.D.Iowa 1976).

We regard *Tinker* as controlling here.[4] Most of the decisions agree that the *Tinker* implication of malice from an intentional and wrongful act remains proper under the Bankruptcy Code despite the Code's somewhat confusing legislative history. *See Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986); *St. Paul Fire & Marine Insurance Company v. Vaughn*, 779 F.2d 1003 (4th Cir.1985); *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875 (8th Cir.1985); *First National Bank of Albuquerque v. Franklin (In re Franklin)*, 726 F.2d 606 (10th Cir.1984); *Kelt v. Quezada (In re Quezada)*, 718 F.2d 121 (5th Cir.1983), *cert. denied* 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 (5th Cir.1983). Thus the "willful and malicious" conduct required for intentional interference with contractual relations is the same type of conduct for which a discharge is denied—conduct done intentionally without just cause or excuse which necessarily causes injury.

## 2. Requirements for Issue Preclusion

Four requirements must be met in order that a prior judgment have preclusive effect upon a pending factual issue:

(1) The issue sought to be precluded must be the same issue as that involved in the prior action;

(2) That issue must have been actually litigated;

(3) It must have been determined by a valid and binding judgment; and

(4) The determination must have been essential to the judgment.

*In re Ross, supra; Spilman v. Harley, supra; Lombard v. Atkins (In re Lombard), supra; see Restatement (Second) of Judgments* § 27 (1982).

Our prior discussion disposes of the first requirement. No questions arise concerning the second requirement, validity of the judgment. Nor do we doubt that the issue of willful and malicious injury was actually litigated or that its resolution was essential to the judgment. The state court complaint alleged that the debtor intentionally interfered with the plaintiff's contract by instructing T.D.U. not to accept the relief which the court had granted. This allegation was denied in the answer and contested at a trial in which both the plaintiff and the debtor testified. A jury returned a general verdict for the plaintiff on the count for intentional contractual interference. The judge's charge informed the jury that the plaintiff must prove by a fair preponderance of the evidence that the debtor knew of the existence of the plaintiff's contract with T.D.U. and that the debtor intentionally and wrongfully interfered with that contract in order for the plaintiff to prevail on the intentional interference with contractual relations claim. The judge defined "intentional interference" as "something done intentionally without just cause or excuse." This definition parallels the *Tinker* standard.

## 3. Identity of Plaintiff's Burden of Proof in State Court Case And Here

Even though all four of these requirements are met, issue preclusion is nevertheless improper if the party against whom preclusion is sought had a burden of proof in the initial action which is significantly heavier than his burden in the present action. *Restatement (Second) of Judgments* § 28 (1982); *Henderson v. D'Annolfo (In re D'Annolfo)*, 54 B.R. 887 (Bankr.D.Mass. 1985). We conclude that the plaintiff's burden is the same.

---

4. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) is the other important Supreme Court pronouncement on the subject. In *Davis,* aided by fact finding below, the court held that it was not willful and malicious for a car dealer to sell a car free of a creditor's security interest where the sale was in the normal course and the creditor had previously consented after the fact to such sales, even though the debtor's conduct constituted legal conversion. The court did not have before it any issue concerning conversion of the proceeds. *Davis* is perfectly compatible with *Tinker* because of the debtor's good faith in *Davis.*

Massachusetts requires that the plaintiff in all civil proceedings, including those involving allegations of fraud, prove his case only by a fair preponderance of the evidence. *See Callahan v. The Fleischman Co.*, 262 Mass. 437, 160 N.E. 249 (1928); *Grella v. Lewis Wharf Co.*, 211 Mass. 54, 97 N.E. 745 (1912). In fact, the state generally avoids imposing any intermediate standard of proof on plaintiffs in civil cases. *See In re Mayberry*, 295 Mass. 155, 167, 3 N.E.2d 248, 253 (1936) (Terms such as "clear and convincing" and "not of doubtful character" are helpful in emphasizing a careful approach to the decision of certain important issues, but are "too vague to serve generally as a practical guide in the trial of cases."). The judge's charge in the state proceeding here affirmed this standard.

The burden of proof under § 523(a)(6) is not quite as clear. In dischargeability cases involving misrepresentation or fraud under § 523(a)(2) and its predecessor, the courts are divided on a plaintiff's required burden of proof. Many require proof by clear and convincing evidence. *See, e.g., In re Bogstad*, 779 F.2d 370 (7th Cir.1985); *Cement National Bank v. Colasante (In re Colasante)*, 12 B.R. 635, 639 (E.D.Pa. 1981); *Brown v. Buchanan (In re Brown)*, 419 F.Supp. 199 (E.D.Va.1975); *Lesperance v. Kirst (In re Kirst)*, 37 B.R. 275 (Bankr. E.D.Wis.1983); *Harb v. Toscano (In re Toscano)*, 23 B.R. 736 (Bankr.D.Mass. 1982); *Peoples Security Finance, Inc. v. Aldrich (In re Aldrich)*, 16 B.R. 825 (Bankr.W.D.Ky.1982); *Long v. Trewyn (In re Trewyn)*, 12 B.R. 543 (Bankr.W.D.Wis. 1981); *Kuehne v. Huff (In re Huff)*, 1 B.R. 354 (Bankr.D.Utah 1979); *In re Barlick*, 1 Bankr.Ct.Dec. (CRR) 412 (Bankr.D.R.I. 1974). In those decisions which discuss the question, there appear to be three different rationales for requiring proof under § 523(a)(2) or its predecessor by clear and convincing evidence. Some courts have done so because they believe that this is the traditional standard of proof in fraud cases outside of bankruptcy as the result of a presumption of honesty. *See, e.g., Long v. Trewyn (In re Trewyn)*, 12 B.R. 543 (Bankr.W.D.Wisc.1981); *Kuehne v.*

*Huff (In re Huff)*, 1 B.R. 354 (Bankr.D. Utah 1979). Other courts seem to impose the requirement because of the belief that exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. *See, e.g., Lesperance v. Kirst (In re Kirst)*, 37 B.R. 275 (Bankr.E.D.Wis.1983); *Peoples Security Finance, Inc. v. Aldrich (In re Aldrich)*, 16 B.R. 825 (Bankr.W.D.Ky.1982). In an early and frequently cited decision, one bankruptcy court imposed the stricter requirement out of concern for the difference in the bargaining power of debtor and creditor. *See In re Barlick*, 1 Bankr.Ct. Dec. (CRR) 412 (Bankr.D.R.I.1974). *See generally* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, 58 Am.B.J. 348 (1984). A number of other courts, however, note the absence of an express requirement in the statute for a "clear and convincing" standard of proof. These courts require only that the creditor establish misrepresentation or fraud under § 523(a)(2) or is predecessor by a fair preponderance of the evidence. *See, e.g., York v. Shepherd (In re Shepherd)*, 56 B.R. 218 (W.D.Va.1985); *The County Trust Co. v. Weiler (In re Weiler)*, 1 Bankr.Ct.Dec. (CRR) 1521, 1523 (S.D.N.Y. 1975); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967); *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813, 817 (Bankr.E.D.N.Y.1981) (standard of proof in *all* dischargeability proceedings is a fair preponderance of the evidence).

■ The debtor here intimates that a clear and convincing standard is required in § 523(a)(6) cases by contending that the state court judgment is not sufficient to establish a *prima facie* case in this Court. We are not persuaded, however, by the reasoning of those courts holding that a clear and convincing standard of proof is required under § 523(a)(2). Much of that reasoning is inapplicable to this § 523(a)(6) case. We have been directed to no decision indicating that the plaintiff here has a greater burden of proof under § 523(a)(6) than he did in state court. Indeed, the courts which have considered the standard of proof under § 523(a)(6) have ruled that

only a fair preponderance is required. *See York v. Shepherd (In re Shepherd),* 56 B.R. 218, 221 (W.D.Va.1985); *Sunamerica Financial Corp. v. Stephens (In re Stephens),* 26 B.R. 389 (Bankr.W.D.Ky.1983). *See also Bottari v. Baiata (In re Baiata), supra.* Few states, if any, require clear and convincing evidence in order to prove intentional or willful tortious conduct. Although some states require clear and convincing proof in fraud cases, they apparently do not compose a majority. *See* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 Am.B.J. 348, 362–363, n. 83, 85 (1984). A clear and convincing standard under either § 523(a)(2) or § 523(a)(6) strikes us as a pure abstraction and an unwarranted judicial gloss on the statute.[5] In any event, whatever its justification may be in cases involving misrepresentation or fraud under § 523(a)(2), we decline to adopt a clear and convincing standard for this § 523(a)(6) case.

## II. SUMMARY JUDGMENT WITHOUT BENEFIT OF ISSUE PRECLUSION

■ The plaintiff is entitled to summary judgment even without the benefit of issue preclusion. The debtor unquestionably was responsible for persuading T.D.U. to drop the court case. The debtor contends that there is a genuine issue of material fact as to his knowledge that the individual members of T.D.U. had only limited liability to the plaintiff and that the plaintiff's engagement required him to look to the Union for his entire fee if he were successful on the merits and obtained a court order against the Union for the fee. We agree that the debtor's knowledge in this regard is a material fact, but we fail to see that there is a genuine issue concerning it in light of the parties' affidavits.

There is no dispute that the plaintiff telephoned the debtor on or about January 17, 1980, shortly after the Second Circuit had reversed the district court's denial of a preliminary injunction. The plaintiff states in his affidavit he told the debtor that if the debtor persisted in convincing the others to decline injunctive relief, this would prevent the plaintiff from obtaining a portion of his fee. The debtor admits receiving the telephone call and admits the plaintiff told him that not proceeding with the litigation would prevent the plaintiff from receiving a court-awarded fee. He then attempts to blunt this admission by saying: "However, I have no recollection of Mr. Stern saying he was entitled to receive those Court awarded attorney fees plus Six Thousand and 00/100 ($6,000.00) Dollars." It is irrelevant for our purposes whether court awarded fees were to be in addition to fees paid by T.D.U. or were to be for the entire services with the plaintiff refunding the prior payments.[6] The debtor admits he knew that his actions, if continued, would prevent at least some payment of fees to the plaintiff.

---

**5.** The origin of a higher standard in dischargeability proceedings seems to be more the result of some rather flowery language in the decisions than any sound analysis. *See Brown v. Buchanan (In re Brown),* 419 F.Supp. 199 (E.D. Va.1975) and decisions cited therein. The progeny of this judicial embellishment has been a rigid, almost reverent, application of the clear and convincing standard by bankruptcy courts. The danger of this unyielding approach is the disregard of state court judgments even when the parties fully litigated the issues involved in the dischargeability proceeding and the factfinder made clear, definite findings with regard to those issues. *See, e.g., Henderson v. D'Annolfo (In re D'Annolfo),* 54 B.R. 887 (Bankr.D.Mass. 1985) (stricter bankruptcy standard prevents issue preclusion even when a special jury verdict gives a precise answer to the factual questions relevant to the dischargeability proceedings). *But see Dodson v. Church (In re Church),* 69 B.R.

425 (Bankr.N.D.Tex.1987) (state court judgment with special jury verdict should not be disregarded solely because the bankruptcy court applies a different standard; a "global view" of the proceedings should be taken and issue preclusion applied when appropriate). In practice, it is perhaps impossible to grasp or explain the difference between the various standards of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2522, 91 L.Ed.2d 202 (Rehnquist, J., dissenting) (quoting from *Addington v. Texas,* 441 U.S. 418, 424–25, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979)) (suggesting that the ultimate truth as to how various standards of proof affect decisionmaking may well be *unknowable* ).

**6.** The plaintiff, incidentally, indicates that upon receiving the full award from the Union, he would have refunded the T.D.U. payments to it, as perhaps ethically he would have to.

This admission is not affected by other statements in the debtor's affidavit affirming his belief that the plaintiff would be paid what was owed him by the individuals who had hired him. The debtor carefully does not say he believed the plaintiff would be paid his entire fee by these individuals. Nor is the debtor aided by the penultimate paragraph of his supplemental affidavit where he states in general terms: "I did not know that I was directly interfering with Mr. Stern's ability to be paid for his services." This statement is followed by another affirmation of belief that the plaintiff would be paid by the individuals who had hired him, so that it clearly refers to that limited portion of the fee.

The debtor does not deny that he knew court-awarded fees would likely be in excess of what the plaintiff was entitled to be paid by his individual clients, or that his action prevented the payment of court-awarded fees. His affidavits appear to have been craftily drawn to skirt that vital issue. The plaintiff's affidavits, on the other hand, meet the issue head on. The plaintiff also states that the debtor agreed to do his best to see that the difference in the fee amount would somehow be made up to the plaintiff. This indicates an awareness on the part of the debtor that the court-awarded fee would likely be more than the fee for which the plaintiff's clients were responsible. The debtor makes no denial of such a promise.

We recognize that these affidavits must be viewed in the light most favorable to the debtor as the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975). But the debtor's affidavit is much like the one considered in *Dressler v. The MV Sandpiper,* 331 F.2d 130 (2d Cir. 1964), an affidavit which the court described as "so pregnant with a negative as to have virtually given birth to its contradiction." *Id.* at 134. Where the moving party has carried his burden under Fed.R. Civ.Pro. 56(c), his opponent must do more than indicate some "metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). We see no genuine issue for trial concerning what the debtor knew of the plaintiff's fee arrangement. His undisputed conduct and knowledge, even aside from the findings in state court, establish that this debt is for willful and malicious injury under the authority of *Tinker v. Colwell, supra.*

Summary judgment shall issue for the plaintiff.