**In re Glenn E. WELLEVER, Debtor.**

**Gina Kathleen HUNNICUTT, Plaintiff,**

**v.**

**Glenn E. WELLEVER, Defendant.**

**Bankruptcy No. HM 87 00191.
Adv. No. 88 0001.**

United States Bankruptcy Court,
W.D. Michigan.

July 25, 1989.

Robert D. Heikkinen, Marquette, Mich., Bruce W. Brouillette, Iron Mountain, Mich., for the debtor.

Darrell R. Dettmann, Marquette, Mich., for plaintiff.

Donald W. Bays, Marquette, Mich., for the Trustee.

Kenneth C. Smith, Hancock, Mich., Trustee.

## OPINION

### COLLATERAL ESTOPPEL EFFECT OF A STATE COURT JUDGMENT ON DISCHARGEABILITY PROCEEDINGS

LAURENCE E. HOWARD, Chief Judge.

On April 26, 1989, I heard and granted from the bench the motion of the plaintiff, Gina Kathleen Hunnicutt, for partial summary judgment against the debtor, Glenn E. Wellever, under 11 U.S.C. § 523(a)(6). The following opinion restates my bench opinion and is intended to expand upon and clarify that opinion.

Previously, I had denied the plaintiff's motion for summary judgment on the grounds that the plaintiff had not provided me with enough of the state court record that she was relying upon to determine whether I could give collateral estoppel effect to the state court judgment under *Spilman v. Harley,* 656 F.2d 224 (6th Cir. 1981). The plaintiff has now renewed her motion and has supplied me with larger parts of that state court record.

The plaintiff, Gina Kathleen Hunnicutt, is a pre-petition judgment creditor of the debtor based on two Oklahoma state court judgments, one a jury verdict in the amount of about $45,000, and the other a default judgment in the amount of about $5,000. Subsequent to the entry of these judgments, the debtor filed a petition under Chapter 7 of the Bankruptcy Code initiating this bankruptcy case. The plaintiff then filed this adversary proceeding seeking to have the debts due to her declared nondischargeable under 11 U.S.C. § 523(a)(6). The plaintiff has now moved for summary judgment as to the jury verdict only.

The following background facts are undisputed and are provided only to put this case into context. On April 1, 1985, in Wilburton, Oklahoma, the plaintiff's mother, Geraldine Wellever, and her brother, Gregory Wellever, were killed by gunshots and the plaintiff's father, debtor Glenn E. Wellever, was wounded. Plaintiff, Gina Hunnicutt, was charged with responsibility

for these acts, arrested, tried and acquitted by a unanimous jury verdict of Latimer County District Court, Oklahoma, on September 6, 1985. Gina Hunnicutt then sued Glenn Wellever on a malicious prosecution theory, alleging that the only reason she was arrested, charged and tried was because he had identified her as the killer when in fact he knew she was not the killer. Glenn Wellever denied these allegations. On June 17, 1987, the jury found for Gina Hunnicutt in the amount of or about $34,806.75. On August 18, 1987, judgment was entered upon this verdict in the total amount of or about $45,025.75, including interest and attorney's fees. This is the verdict on which the plaintiff asks for summary judgment.

Earlier I denied this motion for summary judgment because the plaintiff had provided me with copies of only two documents, her Oklahoma complaint, and the Oklahoma order setting forth the jury's verdict. I held these documents to be insufficient for me to determine whether the issues raised under § 523(a)(6) had also been "actually litigated" in the Oklahoma proceeding and if they were "necessary to the decision" in the Oklahoma state court. The plaintiff has now supplied me with a copy of the jury instructions and the jury verdict. The jury instructions set forth the elements of malicious prosecution under Oklahoma law, which would be the issues determined by the jury. These elements must be compared with the requirements of § 523(a)(6).

Section 523(a)(6) provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt ...

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Of this section, the Sixth Circuit has said that:

> Under § 523(a)(6) of the Bankruptcy Code "willful means deliberate or intentional." S.Rept. No. 95–989, 95th Cong. 2nd Sess. (1978) reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 5865;

H.Rept. No. 95–595, 95th Cong. 1st Sess. (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6320. "Malicious" means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm. *Tinker v. Colwell*, 193 U.S. 473, at 486, 24 S.Ct. 505, at 508, 48 L.Ed. 754 (1904); *In re Voltolini*, 48 B.R. 199, 201 (Bankr.D.Mass.1985); *In re Capparelli*, 33 B.R. 360, 365 (Bankr.S.D.N.Y. 1983); *In re Klix*, 23 B.R. 187, 7 C.B.C. 2d 276, 279 (Bankr.E.D.Mich.1982).

*Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986). In *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987) the Sixth Circuit held that to be nondischargeable under § 523(a)(6) an act committed by the debtor need only be intentional on the debtor's part and necessarily lead to injury; it is not necessary that the debtor intend to cause the injury, merely "the intentional doing of an act that necessarily leads to injury." 817 F.2d at 394. Furthermore, the Sixth Circuit quoted *Collier's* to the effect that:

> In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

817 F.2d at 394, quoting 3 Collier on Bankruptcy, 523–111 (15th ed. 1986). These are the standards the case must be compared with.

Instruction No. 3 from the Oklahoma case told the jury they must decide whether or not the plaintiff's theory was correct. It described the plaintiff's claim as being that Glenn E. Wellever "falsely and maliciously named her as the person who fired ... the shots ... and thereby caused her

wrongful imprisonment and prosecution," that "Glenn E. Wellever knew that his accusation against the plaintiff, Gina Kathleen Hunnicutt, was false, ... that as a result of the accusation she was incarcerated in the Latimer County Jail," and that "as a result of the false accusation of the defendant, Glenn E. Wellever, she sustained damages."

Instruction No. 4 states that:

In order for Plaintiff, Gina Kathleen Hunnicutt, to recover from Defendant, Glenn E. Wellever, on his (sic) claim, you must find that all six (6) of the following have been established.

1. That a prosecution for two Counts of First Degree Murder and one Count of Shooting with Intent to Kill was commenced against Plaintiff, Gina Kathleen Hunnicutt;

2. That the prosecution was malicious;

3. That the prosecution was instituted or instigated by Defendant, Glenn E. Wellever;

4. That the prosecution was without probable cause;

5. That the prosecution has been legally and finally terminated in favor of Plaintiff, Gina Kathleen Hunnicutt; and

6. That as a result of the criminal prosecution, Plaintiff, Gina Kathleen Hunnicutt, sustained injury.

Instruction No. 6 states that, "In order to establish express or actual malice, the action complained of must have been done with ill will or hatred, or willfully done in a wanton or oppressive manner, and in conscious disregard of the other's right." Instruction No. 8 states that, "Malice existed if the principal motive of the defendant, Glenn E. Wellever, was other than a desire to bring an offender to justice." Instruction No. 9 provides that:

You are instructed that probable cause constitutes a complete defense in a action for malicious prosecution. Upon proof of probable cause other elements such as malice and conspiracy are immaterial.

"Probable cause" is defined at Instruction No. 7 as follows:

Probable cause was present if the facts and circumstances known to Defendant, Glenn E. Wellever, was (sic) such as to justify a man of prudence and caution in believing that the action of filing suit or complaint against the Plaintiff, Gina Kathleen Hunnicutt, was justified.

At Instruction No. 10 the jury was further instructed "that the lack of probable cause can never be inferred from malice alone," and at No. 12, "that the fact that the action which is alleged to constitute the malicious prosecution has been terminated in favor of the complaining party is of itself insufficient to establish lack of probable cause on the part of the defendant, Glenn E. Wellever, in an action for malicious prosecution." Instruction No. 16 instructed the jury, "If you find in favor of the plaintiff, Gina Kathleen Hunnicutt, you shall assess as her actual damages an amount that will fairly and justly compensate the Plaintiff, Gina Kathleen Hunnicutt, for the malicious prosecution."

The jury found for Gina Kathleen Hunnicutt and set her actual damages at $34,806.75.

Reading the jury instructions and comparing them with § 523(a)(6) and the Sixth Circuit interpretation of that section, I am left with the definite conviction that the Oklahoma jury faced and decided all the factual issues which are predicates to nondischargeability under § 523(a)(6). In order to find for the plaintiff as they did, the jury had to find that Glenn Wellever, with malice and without probable cause, instituted or instigated a prosecution for murder which failed to convict her but which did cause her injury. Malice is defined in the jury instructions as an action "done with ill will or hatred, or willfully done in a wanton or oppressive manner, and in conscious disregard of the other's right." Jury Instruction No. 6. The Sixth Circuit has held that in order to be nondischargeable, an act must be committed willfully, that is deliberately or intentionally, "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler*, 783 F.2d at 615. At a minimum, the Oklahoma

jury found malice as it is defined by the Sixth Circuit. Furthermore, the Sixth Circuit has held that in order to be nondischargeable, the act must necessarily lead to injury. *Perkins,* 817 F.2d at 394. Accusing someone of murder when in fact you have no reason to believe they are responsible will necessarily produce the harm of unjust imprisonment. I would therefore grant summary judgment under the doctrine of collateral estoppel and the authority of *Spilman v. Harley.*

Two objections might be raised to the imposition of nondischargeability based on this record. The first objection could be based upon *Spilman v. Harley;* as I held in my first opinion on this motion, *Spilman* says the bankruptcy court "should look at the entire record of the state proceeding, not just the judgment, ... or hold a hearing if necessary." 656 F.2d at 228. The plaintiff, however, has not given me the whole record. Instead, she has given me a copy of her complaint, the jury verdict, the jury instructions and the judgment. However, I do not think that I am required to have the entire transcript before I grant summary judgment. In *Spilman,* the bankruptcy court had given collateral estoppel effect to an underlying judgment, and based on that judgment had precluded a creditor plaintiff from litigating the willfulness of a debtor's acts. The Sixth Circuit reversed and remanded with instructions to look at the entire state court record to see if the issue of willful and malicious conduct was actually litigated and was necessary to the judgment. In this case, it is clear from the jury instructions and the verdict that the issue of willful and malicious conduct was not merely "actually litigated" and "necessary" to the judgment, but rather that it was in fact the central and sole issue before the jury and the main question they had to confront in deciding to hold for the plaintiff. To insist upon an entire transcript of the trial, in this case, would be empty formalism. If the state court proceeding had been one with multiple issues or claims, and if the judgment did not specify on which theory it was being awarded, then I would think I might have to read the whole transcript, as some

circuits appear to require. *See, First National Bank of Albuquerque v. Franklin (In re Franklin),* 726 F.2d 606 (10th Cir. 1984). But the difference is that the Tenth Circuit in *Franklin* requires the bankruptcy court to undertake a *de novo* review before imposing nondischargeability; the whole point of *Spilman* is that the Sixth Circuit has decided not to require bankruptcy courts to perform a *de novo* review. Under *Spilman* I think it would be sufficient for the bankruptcy court to look at enough of the state court record to assure itself that the issues it faces in a nondischargeability proceeding were actually litigated in state court and were necessary to the state court judgment. If in one case that means looking at the entire record, then the entire record must be read; if in another case less will suffice, that is all that is needed.

As the Fourth Circuit held in considering the identical question the extent of review necessary in *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988):

> In many cases, a review of the full transcript may be required before the bankruptcy court can determine that an issue was actually and necessarily litigated in an earlier suit. Here, however, the instructions demonstrate that the question of malice was actually litigated by the parties in connection with the issue of punitive damages. When the jury returned its verdict awarding punitive damages to the plaintiff, its finding that "the defendant acted willfully and maliciously" was an essential prerequisite to that award.

838 F.2d at 117. Here, the Oklahoma jury instructions demonstrate that the question of malice was actually litigated by the parties in connection with the award of actual damages, and when the Oklahoma jury awarded actual damages to Ms. Hunnicutt, their finding that " 'the defendant acted willfully and maliciously' was an essential prerequisite to that award."

Furthermore, this is the second time this court has faced this motion. The defendant has had two opportunities to introduce any portion of the record which he believes

might favor him or might undermine those portions the plaintiff has introduced. The defendant has introduced nothing. Therefore, I believe I may grant summary judgment upon this record.

The second possible objection goes to the standard of proof. The Oklahoma judge instructed the jury as follows:

> When I say that a party has the burden of proof on any proposition, or use the expression, "if you decide," I mean you must be persuaded, considering all the evidence in case, that the proposition on which such party has the burden of proof is more probably true than not true.

Instruction No. 11. I believe this could be called the "preponderance of the evidence" standard. The *Franklin* opinion, for one, however, might be read as requiring a "clear and convincing" standard, 726 F.2d at 607. In other decisions, the issue of the correct standard may at least be called confused. *Alvine v. Keller (In re Keller)*, 72 B.R. 599, 602 (Bankr.M.D.Fla.1987). The Sixth Circuit has clearly and repeatedly held that the proper standard of proof for a fraud case under § 523(a)(2) is clear and convincing. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1165 (6th Cir.1985); *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir.1986); *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986). However, each of these decisions is clearly referring only to the proper standard of proof under § 523(a)(2); none even in dicta states that this is the proper burden of proof for all actions under § 523(a). Nor have I been able to find a single decision in which the Sixth Circuit has decided the proper standard of proof for actions under § 523(a)(6), or its Act predecessor, § 17(a)(8). Moreover, there are cogent, persuasive cases which have held that the proper standard of proof under § 523(a)(6) is the preponderance of the evidence. *Hardin v. Caldwell (In re Caldwell)* 60 B.R. 214, 14 B.C.D. 441, 444 (Bankr.D.Tenn. 1986); *Stern v. Dubian (In re Dubian)*, 77 B.R. 332, 337–339 (Bankr.D.Mass.1987); *Combs v. Richardson*, 838 F.2d 112, 115–116 (4th Cir.1988).

As the *Dubian* opinion notes, issue preclusion would be improper if the plaintiff has had a lesser burden in state court than that applied in this court. That is, if the correct standard of proof for a § 523(a)(6) action is clear and convincing, then I must deny summary judgment because the Oklahoma jury was operating under the preponderance of the evidence standard.

Since the Sixth Circuit has opted for the clear and convincing standard under § 523(a)(2) it might be asked why that shouldn't be the standard for § 523(a)(6) or for all § 523(a) proceedings. However, § 523(a)(2) is different from the other subsections because it deals with fraud. As has been noted by one commentator, federal courts may have adopted the clear and convincing standard for fraud cases under § 523(a)(2) (or § 523(a)(6) if the plaintiff alleges that the fraud violated that section as well, see *In re Keller*) because many states, while requiring only a preponderance of the evidence to prove torts, require clear and convincing evidence to prove fraud. Ferriell, *The Preclusive Effect of State Court Decisions*, 58 Am.Bankr.L.J. 349, at 363, note 85; but see page 362, note 83 (Fall, 1984). *See also Borg Warner Acceptance Corporation v. Watkins (In re Watkins)* 90 B.R. 848, 849–851 (Bankr.E.D. Mich.1988). It would certainly be anomalous if creditors found it easier to prosecute a fraud case on dischargeability in bankruptcy court than it would be to pursue a fraud case in state court. Furthermore, even if all or most states do not require clear and convincing evidence of fraud, so long as some do, the federal standard, absent a controlling statute, should probably be as high since federal law must be uniform on such points. However, if that is the reason why clear and convincing is the standard under 523(a)(2), it is not applicable to § 523(a)(6) and it is conceivable the two sections should have different standards of proof. *See, Dubian*, 77 B.R. at 338.

The *Dubian* opinion also cites two other reasons why courts require clear and convincing evidence and found these unpersuasive under § 523(a)(6). One is the belief that exceptions to discharge should be con-

strued strictly against the creditor and liberally in favor of the debtor. Yet this policy is best served by construing the *scope* of the exceptions narrowly, not by arbitrarily making their proof more difficult. Another argument· advanced is an alleged disparity in the bargaining power of creditors and debtors. If such a disparity exists in a case, however, it is irrelevant to the issues before the court. If a debtor has committed a nondischargeable act he should not have the benefit of a discharge; if he has not committed such an act, no amount of disparity will force the court to deny a discharge or except a debt from discharge. Increasing the burden of proof to clear and convincing is an arbitrary remedy to an ill-defined, irrelevant situation, "a pure abstraction and an unwarranted judicial gloss on the statute." *Dubian,* 77 B.R. at 339. There is no basis in the Code for such a standard and, absent a directive from Congress, the normal standard of preponderance should be used. *Combs,* 838 F.2d at 116.

Moreover, I doubt that the higher standard would have much practical effect but to make state court judgments unenforceable in bankruptcy court because, as noted in the article by Professor Ferriell, most states require only a preponderance of the evidence to prove a tort. 58 Am.Bankr.L.J. at 362, n. 83 and at 363, n. 85. This in turn would undermine *Spilman,* for it would make the application of collateral estoppel a theoretical possibility but a practical impossibility.

I am gratified to find support for my decision in the Fourth Circuit's *Combs* opinion, which held at page 116 that "the policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the debtor's acts under § 523(a)(6)," and in Judge Spector's *Watkins* opinion.

For the above reasons, I conclude that the proper standard of proof under § 523(a)(6) should be the preponderance of the evidence. I further conclude that I have been given a sufficient portion of the Oklahoma court record to assure myself that the issues of the debtor's willful and malicious conduct were actually litigated and were necessary to the judgment against him. Therefore, there being no issues of material fact which are left in question, and the facts as determined by the Oklahoma jury justifying a decision of nondischargeability as a matter of law, I grant the plaintiff's motion for summary judgment on the jury verdict.

An order to this effect has been entered.