In re Kenneth Duane SHAW, Debtor.

Betty Jane SHAW, Plaintiff,

v.

Kenneth Duane SHAW, Defendant.

Bankruptcy No. 96–88794.
Adversary No. 97–8087.

United States Bankruptcy Court,
W.D. Michigan,
Southern Division.

July 25, 1997.

Willard F. Rappleye, Diane M. Rappleye, argued, Rappleye & Rappleye, Jackson, MI, for Plaintiff.

Kenneth Duane Shaw, pro se.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JO ANN C. STEVENSON, Bankruptcy Judge.

This dispute arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 24, 1984, and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court is authorized to enter a final judgment subject to the right of appeal embodied in 28 U.S.C. § 158(a) in accordance with Fed. R.Bankr.P. 8001 and 8002. The Court hereunder makes no findings of fact but submits its conclusions of law pursuant to Fed. R.Bankr.P. 7052.

### The Issues

This Opinion represents yet another contribution to the growing area of the law of collateral estoppel vis á vis bankruptcy dischargeability actions. We address here whether pursuant to Michigan law this Court may accord collateral estoppel effect to a Michigan criminal conviction in a nondischargeability action and whether collateral estoppel may be applied to a consent judgment. Based on our reading of Michigan law we answer both questions in the negative. Nevertheless, based on our accord of collateral estoppel to the state court's finding of assault in the civil action and Defendant's admissions in the bankruptcy court, we grant Plaintiff's Motion for Summary Judgment.

### Stipulated Facts and Procedural Posture

As is generally the case with a motion for summary judgment based on collateral estoppel, we start with a procedural history of those events precipitating the debtor's bankruptcy filing. On May 17, 1991, Defendant Kenneth Duane Shaw ("Mr.Shaw") and his then-wife Betty Jane Shaw ("Ms.Shaw") were involved in an altercation, during which she was shot by Mr. Shaw and injured. On January 28, 1992, following a jury trial in Hillsdale County Circuit Court, Mr. Shaw was convicted of Assault with a Dangerous Weapon (known as "felonious assault," M.C.L.A. § 750.82) and Possession of a Firearm during the Commission of a Felony (known as "felony-firearm," M.C.L.A. § 750.227b). He was subsequently sentenced to a term of years in prison. Ms. Shaw then filed a civil complaint against Mr. Shaw in Hillsdale County Circuit Court which included a claim for damages in compensation for the injuries she sustained in the shooting.

Defendant filed an answer to the complaint, through his counsel, denying wrongdoing. Ms. Shaw subsequently moved for partial summary disposition. Circuit Judge Harvey W. Moes granted the requested relief on the issue of assault, leaving other issues for trial, including that of the amount of any damages Ms. Shaw suffered due to the assault. That judgment was not appealed and is now final. On July 27, 1992, prior to trial, Judge Moes entered a "Consent Judgment for Assault and Battery" awarding $300,000 to Ms. Shaw. The consent judgment was signed by attorneys for both parties. Although Mr. Shaw made several attempts to overturn the consent judgment, all were unsuccessful.

On December 13, 1996, Mr. Shaw filed for chapter 7 relief. On January 28, 1997, Ms. Shaw timely filed an adversary proceeding seeking an order of nondischargeability as to

the $300,000 judgment. No answer was filed. At the April 6, 1997 default hearing,[1] this Court instructed Plaintiff's counsel to file a motion for summary judgment based on collateral estoppel. Also at that hearing, Defendant's attorney Richard D. Hitt stated that he had filed a motion to withdraw. As that motion was granted on May 8, 1997, Mr. Shaw is proceeding *in pro per.*

Plaintiff filed her Motion for Summary Judgment and Brief in Support on April 28, 1997. On May 8, 1997, the Court issued a scheduling order denying Mr. Shaw's request to stay the proceedings and allowing him additional time to respond to Plaintiff's Motion for Summary Judgment. Mr. Shaw subsequently filed a response consisting of an array of documents that relate mainly to his current financial condition and other irrelevant matters. To the extent he addressed Plaintiff's Motion, Mr. Shaw re-asserted that he never agreed to entry of the $300,000 consent judgment and that his counsel had done so against his wishes. At the July 8, 1997 hearing on Plaintiff's Motion for Summary Judgment, Mr. Shaw made clear that a single shooting incident gave rise both to his felonious assault conviction and his liability on the consent judgment for assault and battery. He also admitted that Ms. Shaw was injured as a result of the shooting.

■ As a preliminary matter, Mr. Shaw's claim that the consent judgment was improperly entered must fail for two reasons. First, Mr. Shaw appealed the consent judgment several times, culminating in an August 27, 1993 order from the Michigan Supreme Court denying him leave to appeal. Thus the judgment is final. Secondly, and more fundamentally, it is well-settled that a party to litigation is bound by the acts of his attorney and is charged with notice of facts to the extent the attorney is so charged. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 381, 113 S.Ct. 1489, 1490–91, 123 L.Ed.2d 74 (1993) (*citing Link v. Wabash R.R. Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962)). If Mr. Shaw is unsatisfied with his state court representation his remedy is a suit for malpractice. To upset the consent judgment for the reason that his attorney acted improperly would be to visit "the sins of [Defendant's former] lawyer upon [Plaintiff]." *See Link, supra* at 634 n. 10, 82 S.Ct. at 1390 n. 10. This the Court will not do. The consent judgment therefore stands.

■ The damages awarded in the consent judgment, however, are binding in this proceeding. *See Armbrustmacher v. Redburn (In re Redburn),* 202 B.R. 917, 920 (Bankr. W.D.Mich.1996) (dischargeability issues aside, amount of damages awarded in earlier litigated action is res judicata); *Sparks v. Adams (In re Adams),* 147 B.R. 407, 418 n. 27 (Bankr.W.D.Mich.1992), *aff'd in unpublished disposition,* Case No. 1:93–CV–141 (W.D.Mich., Oct. 14, 1993); *see also Day v. Manuel (In re Manuel),* 76 B.R. 105, 107 (Bankr.E.D.Mich.1987) (under Michigan law, consent judgments are given res judicata effect).

### Nondischargeability Pursuant to § 523(a)(6)

■ Ms. Shaw seeks nondischargeability of the consent judgment pursuant to § 523(a)(6), which renders nondischargeable those debts for "willful and malicious injury by the debtor to another entity...." 11 U.S.C. § 523(a)(6). The Sixth Circuit has held "willful" to mean, "a deliberate and intentional act which necessarily leads to injury," and "malicious" to mean, an act done "without just cause or excessive, even in the absence of personal hatred, spite or ill-will." *Perkins v. Scharffe,,* 817 F.2d 392, 394 (6th Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987), (citation omitted). The debtor need not be shown to have intended to do injury, as implied malice is enough. In sum, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *Id.* Plaintiff has the burden of proving each element of § 523(a)(6) by a preponderance of the evidence. *See Grogan v. Garner,*

---

**1.** For a discussion on the entry of default judgments in nondischargeability matters see *FCC*

*National Bank v. Roberts (In re Roberts),* 193 B.R. 828 (Bankr.W.D.Mich.1996).

498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

### Summary Judgment and Authentication of Exhibits

Under Fed.R.Bankr.P. 7056(c) incorporating Fed.R.Civ.Pro. 56(c), summary judgment as to all or a part of a movant's claim is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A motion for summary judgment must be granted where, after examining all facts established by the record, the court finds that no reasonable fact-finder could return a judgment in favor of the nonmoving party. *DXS, Inc. v. Siemens Medical Systems, Inc.,* 100 F.3d 462, 466–67 (6th Cir.1996). All facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ Documents filed in support of a motion for summary judgment must be authenticated. *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 950 (Bankr.N.D.Ill. 1995). The *Bryson* Court stated that,

> [Rule 7056] does not authorize the use of unsworn statements or unverified reports unless such other materials are either (1) identified by affidavit as being authentic or (2) otherwise admissible. Each exhibit must either be a certified copy or be accompanied by a sworn statement as to the authenticity of the document.

*Id.* (citation omitted). Rule 7056(a) provides one method of authentication, whereunder a claimant may file its motion "with ... supporting affidavits." Although filing such an affidavit is not required,[2] it is customarily done where, as here, the movant wishes a court to consider materials outside the pleadings and no depositions, interrogatories, or admissions are on file. *See* Fed.R.Bankr.P. 7056(c). In such cases the movant will oftentimes file an affidavit, including both a state-

ment of facts based on the affiant's personal knowledge and sworn or certified copies of all supporting documents, which should all be admissible as evidence. If unverified documentary evidence is to be struck, however, the non-moving party must object. *See Leonard v. Wessel (In re Jackson),* 92 B.R. 987, 991–92 (Bankr.E.D.Pa.1988) (Rule 7056(e) defects are subject to a motion to strike, but in the absence of a motion such defects are waived).

■ Plaintiff filed thirteen exhibits with her Brief in Support, none of which was sworn or otherwise authenticated. Nor did she file an affidavit with her Motion. However, Defendant did not move to strike any of the exhibits. While we recognize that Mr. Shaw is proceeding *in pro per,* the fact that a litigant is not represented by counsel generally does not relieve him of responsibility for complying with the applicable rules of court and evidence. *See In re de Kleinman,* 136 B.R. 69, 71 (Bankr.S.D.N.Y.1991) ("once Debtor determined to represent herself *pro se* she undertook the responsibility to comply with the relevant rules of procedural and substantive law ... therefore, she is to be graced with no special treatment as a reward for her decision to represent herself.") (citation omitted). On the other hand, some courts have determined that pleadings filed by *pro se* litigants should be examined under less stringent standards than those applied to attorneys. *See Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *People v. Herrera,* 204 Mich.App. 333, 339, 514 N.W.2d 543 (1994). We apply the lesser standard in this case, and assume that standard also applies to objections to pleadings which should have been made but were not. For purposes of this Opinion, however, the Court will assume that all exhibits filed are authentic.

### Collateral Estoppel

#### 1. In General[3]

■ We turn next to whether Plaintiff may rely on collateral estoppel to bar Defen-

---

2. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

3. Although "collateral estoppel" and "res judicata" are often used interchangeably, the doctrines are related but quite distinct. Under collateral

dant from litigating in this Court issues raised and decided during the prior state court proceedings. As stated in *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Collateral estoppel, judiciously applied, saves litigants from relitigating issues, promotes judicial economy, and prevents inconsistent decisions. *Id.; see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The doctrine applies in dischargeability actions. *Grogan, supra* at 284 n. 11, 111 S.Ct. at 658 n. 11.

■■■■ We turn first to the Full Faith and Credit statute, which mandates that state court judgments be given "the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State[s] ... from which they are taken." *See* 28 U.S.C. § 1738. When determining the preclusive effect of a state court judgment in a nondischargeability action we are directed to consult the law of the state where the prior judgment was entered, in this case Michigan. *See In re Calvert, supra* at 317 (*citing Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 375, 105 S.Ct. 1327, 1329, 84 L.Ed.2d 274 (1985)). If a Michigan court would not apply collateral estoppel the inquiry is finished, but if it would, so must this Court unless an exception to § 1738 applies. *See Id.* (*citing Marrese, supra* at 386, 105 S.Ct. at 1334–35); *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 895 (Bankr. W.D.Mich.1996).

### 2. The Consent Judgment

■■■■ Under Michigan law, "[f]or collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel." *Nummer v. Treasury Dept.*, 448 Mich. 534, 542, 533 N.W.2d 250 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995) (citation omitted).

■■■■ Although the Michigan Supreme Court has not spoken on the issue, the Michigan Court of Appeals has ruled that consent judgments must not be accorded collateral estoppel effect. *American Mutual Liability Insurance Co. v. Michigan Mutual Liability Co.*, 64 Mich.App. 315, 326–28, 235 N.W.2d 769 (1975); *accord Smit v. State Farm Mutual Automobile Insurance Co.*, 207 Mich. App. 674, 682, 525 N.W.2d 528 (1995); *Rzepka v. Michael*, 171 Mich.App. 748, 756, 431 N.W.2d 441 (1988); *Van Pembrook v. Zero Mfg. Co.*, 146 Mich.App. 87, 106, 380 N.W.2d 60 (1985). A consent judgment is considered a settlement rather than a fully litigated lawsuit, in that "nothing is adjudicated between two parties to a consent judgment." *In re Manuel, supra* at 106 (*citing American Mutual, supra* at 326–28, 235 N.W.2d 769). A judge who enters a consent judgment "has not determined the matters put in issue, he has merely put his stamp of approval on the parties' agreement disposing of those matters." *American Mutual, supra* at 326, 235 N.W.2d 769. There is an exception, however. Where parties to a consent judgment express within the judgment an intent to be bound by certain facts, collateral estoppel will bar relitigation of those facts. *Id.* at 327 n. 13, 235 N.W.2d 769. As cited by Judge Ray Reynolds Graves,

estoppel (or, "issue preclusion") an issue once raised, decided, and necessary to a final judgment may bar relitigation of that issue in a subsequent proceeding between the same parties or their privies, even if the subsequent suit is based upon a different cause of action. *Hackley v. Hackley*, 426 Mich. 582, 590–91, 395 N.W.2d 906 (1986). Under res judicata (or, "claim preclusion") an action resulting in a final judgment bars the relitigation of issues that were or could have been raised in that action as between the

same parties or their privies in a subsequent suit on the same cause of action. *Id.* at 585, 395 N.W.2d 906.

Because bankruptcy courts have exclusive jurisdiction over § 523(a)(6) dischargeability matters, a party may not use res judicata to foreclose an adversary's litigation of a § 523(a)(6) action in bankruptcy court. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 318 n. 4 (6th Cir.1997) (*citing Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)).

'Where the agreement upon which a consent judgment is based is fairly to be construed as providing that the parties should be bound collaterally upon a certain point, that agreement will ... be given effect. An intention to be bound in this way should not however be found unless the language or admissible evidence affirmatively points to it, and such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence. Where the parties to a consent judgment have not agreed to be thus bound, the rules pertaining to the effect of judgments do not require that they should be....'

*Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 100 B.R. 867, 870 (Bankr. E.D.Mich.1989) (*citing* James, *Consent Judgments as Collateral Estoppel*, 108 U.PA. L.REV. 173, 193 (1959)). The pertinent portion of the Shaws' consent judgment reads:

Plaintiff [Ms. Shaw] shall have judgment against Defendant [Mr. Shaw] in the amount of [$300,000] on Count I herein, the assault and battery claim, this amount representing lost wages and wage-earning capacity, costs and interest to date, medical expenses and other actual damages, but no exemplary damages.... All other counts asserted by [the Plaintiff in her Second Amended Complaint] herein shall be dismissed with prejudice....

The "Count I" referenced in the judgment is Count I of Ms. Shaw's second amended state court complaint wherein she claimed, among other things, that "on or about May 17, 1991, Kenneth D. Shaw, Sr. maliciously shot [Plaintiff] with a shotgun, wounding her in the arms, hands, chest and abdomen."[4] Despite this reference to acts committed by Mr. Shaw and injuries resulting therefrom, we find the consent judgment lacks language

that "affirmatively points to" the parties' intent to bind themselves to litigated facts. Rather the judgment includes, at most, a "stipulation or recital" of facts. Therefore the Court cannot accord collateral estoppel effect to the consent judgment.[5] However, as stated *supra*, the $300,000 damage award for the assault and battery of Ms. Shaw is res judicata.

*3. The Criminal Conviction*

■ We next address whether collateral estoppel may be applied to Defendant's criminal conviction. A Hillsdale County Circuit Court jury convicted Mr. Shaw of Felonious Assault under M.C.L.A. § 750.82, a specific intent crime. *See People v. Davis*, 216 Mich.App. 47, 53, 549 N.W.2d 1 (1996) (citation omitted). Under that Section it is a felony punishable by imprisonment of up to four years where, "a person assaults another person with a gun ... or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder." M.C.L.A. § 750.82(1). The elements of the crime are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Davis, supra* at 53, 549 N.W.2d 1. No battery or injury need be proven.

■ Many courts have held that issues raised, litigated, and necessary to a criminal conviction may be given collateral estoppel effect in a subsequent civil proceeding. *See, e.g., Gray v. CIR.*, 708 F.2d 243 (6th Cir. 1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984) (taxpayer who pled guilty to tax evasion was precluded from relitigating liability in tax court); *Goff v. IRS (In re Goff)*, 180 B.R. 193, 199 (Bankr. W.D.Tenn.1995) (debtor who pled guilty to tax evasion was collaterally estopped from

4. *See* Plaintiff's Brief in Support, Exh. E.

5. Plaintiff cites *Perkins, supra*, for authority that a consent judgment may form the basis of a nondischargeable debt. Plaintiff's Brief in Support, at 7–8. However, as collateral estoppel was not applied or even addressed in *Perkins*, the case cannot be relied upon for authority to grant judgment at the summary stage based on a consent judgment. The *Perkins* panel relied on a

Tenth Circuit case in which a bankruptcy court conducted a trial and, after making an "independent determination of [the defendant's] conduct," the judge found "sufficient evidence ... that the [defendant's] actions ... constituted willful and malicious conduct." *See Perkins, supra* at 394 (*citing First National Bank of Albuquerque v. Franklin (In re Franklin)*, 726 F.2d 606 (10th Cir.1984)).

litigating dischargeability of tax debt); *accord* RESTATEMENT OF JUDGMENTS 2D, § 85 ("A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action [a]gainst the defendant in the criminal prosecution....."). The United States Supreme Court has held that collateral estoppel may be appropriate in such cases. *See Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 157, 83 S.Ct. 554, 561–62, 9 L.Ed.2d 644 (1963). However, except in those so-called "crossover estoppel" cases where the government is both prosecutor in a criminal case and plaintiff in a civil case against the same defendant-as in a tax evasion proceeding followed by a civil action-mutuality of estoppel will be absent.[6]

### 4. Mutuality of Estoppel

The mutuality doctrine requires that a party seeking to collaterally estop its adversary must have been a party or a privy to a party against the same adversary in a previous case. Mutuality of estoppel exists where the party "taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Lichon v. American Universal Ins. Co.*, 435 Mich. 408, 427–28, 459 N.W.2d 288 (1990). Quite recently the Michigan Supreme Court, without discussion, re-affirmed its adherence to the doctrine of mutuality. *Nummer, supra* at 549, 533 N.W.2d 250; *see also Lichon, supra* at 428, 459 N.W.2d 288.

Mutuality of estoppel is no longer required in federal cases, however.[7] *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) held that a patentee who lost its action against one defendant was collaterally estopped from relitigating the same patent against a different defendant in a subsequent suit. Thus the *Blonder–Tongue* defendant was allowed to apply "defensive" nonmutual collateral estoppel where the plaintiff was shown to have been afforded a full and fair opportunity to litigate in the first action.[8] *See Blonder–Tongue, supra*, at 329, 91 S.Ct. at 1443. Eight years later the Court further eroded the mutuality requirement when it addressed a plaintiff's attempt to use "offensive" nonmutual preclusion, a more controversial scenario. *Parklane, supra*. involved a stockholders' class action against a corporation previously held liable for fraud in an action brought by the Securities Exchange Commission. The stockholders sought to estop the corporation from relitigating issues decided in the prior action.

The *Parklane* majority discussed the two main arguments against the use of offensive nonmutual preclusion. First, judicial diseconomy may result where a plaintiff, a mass tort victim for example, is allowed to adopt a "wait and see" approach to litigation. The victim, knowing that due process dictates

---

**6.** The term "crossover estoppel" was used in *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627 (1990), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3238, 111 L.Ed.2d 749 (1990), to refer to estoppel cases such as the one at bar, where the prior proceeding is criminal and the subsequent is civil, or vice versa. The court noted that the overwhelming majority of estoppel cases concern two civil proceedings, and that crossover cases are "relatively recent and rare." *People v. Gates, supra* at 155, 452 N.W.2d 627. *Gates* held that a prosecutor was not estopped from trying a defendant on a charge of sexual assault where the defendant had been the subject of a civil jury verdict of no jurisdiction in probate court.

**7.** As stated by the *Parklane* majority in support of its decision to reject a rigid adherence to mutuality, "[b]y failing to recognize the obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost, the mutuality requirement was criticized almost from its inception." *Parklane, su-*

pra at 327, 99 S.Ct. at 649. The majority found additional support in Justice Traynor's statement: "[n]o satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." *Id.* at 328, 99 S.Ct. at 650 (citing *Bernhard v. Bank of America National Trust & Savings Ass'n.*, 19 Cal.2d 807, 122 P.2d 892, 895 (1942)).

**8.** "Defensive nonmutual collateral estoppel" occurs when a defendant bars a plaintiff from raising a claim the plaintiff previously litigated and lost in a prior action against a different defendant; "offensive nonmutual collateral estoppel" occurs when a plaintiff bars a defendant from relitigating an issue the defendant previously litigated and lost in a prior action against a different plaintiff. *See Parklane, supra* at 329, 99 S.Ct. at 650–51.

that judgments involving the alleged tortfeasor and other plaintiffs are not binding on the victim,[9] could await an outcome adverse to the tortfeasor, perhaps in the tenth suit filed. Armed with that judgment, the "wait and see" plaintiff files its own suit and through offensive nonmutual collateral estoppel bars the relitigation of issues decided adversely to the tortfeasor in the suit it lost. The other danger identified by the majority arises where a defendant, sued for nominal damages in one suit and therefore having little incentive to litigate, is thereafter barred from relitigating issues decided in that suit, even where substantial damages are claimed in a subsequent action. Finding neither of those problems present in the case before it, the *Parklane* majority upheld the use of offensive nonmutual collateral estoppel. The rule announced was that:

> the preferable approach for dealing with [the "wait and see" and unfair-to-defendant] problems in the federal courts is not to preclude the use of offensive [nonmutual] collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Parklane, supra* at 331, 99 S.Ct. at 651–52.

Most states have also modified or abandoned the mutuality requirement. Vermont recently joined those states, observing that, " '[n]onmutual issue preclusion is now permitted in federal courts, in most state courts, and in the overwhelming majority of state decisions that have recently reconsidered the question.' " *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 583 A.2d 583, 587 (1990)

(*citing* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4463, at 560 (1981)).[10]

The Michigan Court of Appeals has in several cases ruled that a criminal conviction may estop a criminal defendant from relitigating in a subsequent civil proceeding those issues litigated and necessary to the judgment in the criminal proceeding. *See Knoblauch v. Kenyon*, 163 Mich.App. 712, 720–21, 415 N.W.2d 286 (1987); *Deitz v. Wometco West Michigan TV*, 160 Mich.App. 367, 382, 407 N.W.2d 649 (1987); *Imperial Kosher Catering v. The Traveler's Indemnity Co.*, 73 Mich.App. 543, 252 N.W.2d 509 (1977). However, in *Lichon, supra*, the Michigan Supreme Court refused to permit the further erosion of the mutuality requirement in "crossover estoppel" cases. *Lichon* involved an insurer's attempt to collaterally estop its insured from denying responsibility for a fire, where the insured had pled *nolo contendre* to an attempted arson of the insured premises. *Lichon* reversed the lower courts, which had granted summary judgment in favor of the insurer on grounds of collateral estoppel. The majority, noting the "trend in modern law to abolish the doctrine of mutuality," acknowledged that there exist "several established exceptions" to the mutuality requirement[11] and that "there may be other situations in which the ... requirement is relaxed." *See Lichon, supra* at 428, 459 N.W.2d 288. Nevertheless the *Lichon* Court made clear that "mutuality of estoppel remains the law in this jurisdiction." *Id.* (*citing Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 191 N.W.2d 313 (1971)). Criticizing *Imperial Kosher, supra*, the *Lichon* Court stated,

> [w]hile we make no comment today on the soundness of [*Imperial Kosher's* ] result, we note the inadequacy of its reasoning in that it gives preclusive effect to a criminal

---

9. *See Parklane, supra* at 326, 99 S.Ct. at 649.

10. The *Trepanier* court, in abandoning the "uncritical acceptance of the doctrine of mutuality," ruled that "the critical inquiry is whether the party to be bound has had a full and fair opportunity to contest an issue resolved in an earlier action so that it is fair and just to refuse to allow that party to relitigate the same issue." *Trepanier, supra*, 583 A.2d at 587. Another state to recently convert to nonmutuality, at least defen-

sive nonmutuality, is South Dakota. *See Black Hills Jewelry Manufacturing Co. v. Gold Rush, Inc.*, 336 N.W.2d 153 (S.D.1983). This lowers to approximately ten the number of states which still adhere to strict mutuality. *See* 18 WRIGHT & MILLER, *supra* § 4463 at 561 n. 4.

11. None of the established exceptions apply in this case.

conviction without regard to the absence of mutuality of estoppel. It may be appropriate to create an exception to the mutuality requirement in such a case, but only upon adequate reflection and after stating the explicit reasons for making a departure from settled legal principles.

We express no opinion regarding whether a criminal conviction, based upon a jury verdict, may be given preclusive effect in a subsequent civil proceeding.... We make no ruling as to the preclusive effect of a conviction based upon a guilty plea.... Furthermore, we express no opinion regarding whether [defendant's] conviction would be admissible at trial for impeachment purposes.

*Lichon, supra* at 431, 459 N.W.2d 288.

■■■ We might strain to infer from the quoted language that, presented with an appropriate case, the Michigan Supreme Court would join the great majority of states that have relaxed or abandoned the mutuality requirement. Or we might decide that this case must represent one of those "other situations in which the mutuality requirement is relaxed." However we must follow precedent and refrain from deciding this issue based on speculation that the Michigan Supreme Court might—or should—be willing to discard a settled, although increasingly questioned, rule of law. *Lichon* and *Nummer* make clear that the doctrine of mutuality of estoppel remains the law in Michigan. While this Court is of the opinion that the lack of mutuality should not prevent this case from being decided in a summary proceeding based on the criminal conviction, it is not for us but for the Michigan Supreme Court to announce a new rule of Michigan law. As a Michigan civil court could not properly accord collateral estoppel effect to the issues decided in Mr. Shaw's criminal case, neither may this Court. *See In re Calvert, supra* at 317.

---

**12.** Plaintiff's Brief in Support, Exh. I.

**13.** *Cf. Sudul v. City of Hamtramck,* 221 Mich. App. 455, 458, 562 N.W.2d 478 (1997) (the tort of "assault and battery by gross negligence" is not recognized in Michigan; assault and battery is an intentional tort); *In re Kalita, supra* at 898 (assault and battery is an intentional tort in

### 5. The Civil Judgment—Assault

■■■ Finally we turn to the judgment of partial summary disposition entered in Hillsdale County Circuit Court. In her Second Amended Complaint filed January 29, 1992, Ms. Shaw alleged that Mr. Shaw committed an assault and battery upon her. She subsequently moved for partial summary disposition pursuant to a Michigan Court Rule. *See* M.C.R. 2.116(c)(9), (10). The motion was argued and on July 6, 1992, Judge Moes entered an order that read, in its entirety:

> Upon reviewing the file and hearing the arguments and upon plaintiff's motion for partial summary disposition, the Court being fully advised in the premises,

> IT IS HEREBY ORDERED AND ADJUDGED that plaintiff shall have judgment against the defendant for assault, with the amount of damages for that tort and both liability and damages for all other counts complained of by plaintiff herein to be decided at trial.[12]

Although not provided with the record of the hearing on Plaintiff's motion, and although Judge Moes did not offer reasoning in support of his ruling, the Court is informed that the elements of civil assault are well-settled in Michigan law. Civil assault is defined as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas,* 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991) (*citing Tinkler v. Richter,* 295 Mich. 396, 401, 295 N.W. 201 (1940); Prosser And Keeton On The Law Of Torts § 9 at 39 (5th ed.1984)). Thus the intentional nature of Mr. Shaw's act was raised, litigated, and necessary to the judgment of partial summary disposition.[13] As no exception to

---

Michigan) We need not consider the entire record of the state court proceeding in order to apply collateral estoppel to this judgment, as the finding of an intentional act is necessary to any judgment of assault. *See Hunnicutt v. Wellever (In re Wellever),* 103 B.R. 856 (Bankr.W.D.Mich. 1989).

the Full Faith and Credit Statute is warranted and no unfairness would result, all the elements of collateral estoppel are present. The application of collateral estoppel to the finding of assault is warranted.

It may fairly be said that no injury or battery need be shown to support a judgment of assault. Thus not every assault will "necessarily lead" to an injury. However, Mr. Shaw has admitted that he shot and wounded Ms. Shaw.[14] And the consent judgment reflects that the amount awarded therein represents compensation for the injuries caused by Mr. Shaw's assault and battery of Ms. Shaw. In general, debts arising from assault and battery are considered willful and malicious injuries under § 523(a)(6). *Smith v. Pitner (In re Pitner)*, 696 F.2d 447, 449 (6th Cir.1982). Accordingly, the Court finds that Mr. Shaw's act was intentional, wrongful, resulted in injury and was without just cause or excuse, and therefore that it constitutes a "willful and malicious injury" as a matter of law.

### Conclusion

These facts are undisputed: Mr. Shaw was convicted of felonious assault following a jury trial, a civil judgment of assault was entered against him, damages of $300,000 were awarded pursuant to a consent judgment entered after substantial litigation by the parties, and Mr. Shaw admitted in this Court that his shooting of Ms. Shaw gave rise to both his criminal conviction and the civil judgments. While the Court is constrained not to apply collateral estoppel to either the criminal conviction or the consent judgment, collateral estoppel will be applied to Judge Moes' judgment of civil assault. That judgment, when coupled with Mr. Shaw's admissions on the record and the damages awarded in the consent judgment, satisfy the Court that no issue of material fact remains to be tried.

ACCORDINGLY, FOR THE REASONS STATED HEREIN, IT IS HEREBY ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment be, and hereby is, granted.

2. On or before 4:30 p.m. on Thursday, August 7, 1997, Defendant shall file with the Clerk of the United States Bankruptcy Court and serve upon Plaintiff's counsel his objections, if any, to the authenticity of the documents submitted in support of Plaintiff's Motion for Summary Judgment.

14. At a session of this Court held July 8, 1997, the following exchange took place:

THE COURT: And I want to be as fair about this as I can be, because this is complicated.... Although I don't think that any of the documents that have been submitted to the court have expressly said this, I suspect it's true and need to have an admission or need to have you tell me this on the record, and we're on the record now, am I correct in my assumption that the event which occurred between Mr. Shaw and Betty Jane Shaw which gave rise to the criminal case is the same—is identical, it was one event which also gave rise to the civil case, is that correct?

MS. RAPPLEYE: Yes, it is, your Honor.

THE COURT: Mr. Shaw, do you agree that's correct?

MR. SHAW: Yes.

THE COURT: Okay. I was pretty sure that was so, too, but I really couldn't tell and thought it better to ask. Now, the other thing that I need to ask is, and I think I know the answer to this, too, but let me ask again, that, in fact, Ms. Shaw was physically injured as a result of this event?

MS. RAPPLEYE: Yes.

THE COURT: There was a gun, it went off, she was shot and she was injured?

MS. RAPPLEYE: Yes, your honor.

THE COURT: Is that correct? Is that correct, Mr. Shaw?

MR. SHAW: That's correct.

THE COURT: You don't object to—or you don't dispute that Ms. Shaw was injured as a result of what you did?

MR. SHAW: That's correct.

Transcript of Hearing, July 8, 1997 at 3–4.