**In re Kenneth Ray HIXSON, Debtor.**

**Glenda Hixson, Plaintiff,**

**v.**

**Kenneth Ray Hixson, Defendant.**

**Bankruptcy No. 99–72252.
Adversary No. 99–7106.**

United States Bankruptcy Court, E.D. Oklahoma.

Aug. 18, 2000.

Lance Hopkins, Tahlequah, OK, for plaintiff.

## OPINION

TOM R. CORNISH, Bankruptcy Judge.

This adversary proceeding was brought to determine the dischargeability of a debt

owed to Debtor's former spouse for infliction of gunshot wounds to her head. The Court finds the debt is nondischargeable. In making that determination, the Court also values the Plaintiff's claim at $265,-000.00.

## PROCEDURAL BACKGROUND

■ Plaintiff filed this adversary proceeding seeking a determination that a debt owed to her is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). On June 27, 2000, this Court entered an Order setting the matter for trial on August 1, 2000 and stating that if the Defendant desired to attend the trial, he should file an Application for Writ of Habeas Corpus Ad Testificandum with the Clerk of the United States Bankruptcy Court no later than July 14, 2000. The Defendant did not file such Application. As a result, the Court finds the Defendant is in default after being notified of the trial. At the trial, the Court heard only the testimony of the Plaintiff.

## FINDINGS OF FACT

On May 27, 1997, the Plaintiff was residing at her sister's home in Muldrow, Oklahoma. At approximately 9:00 p.m. that evening, the Defendant fired shots through the open bathroom window, hitting the Plaintiff in the head with three bullets. The Plaintiff then crawled to the living area where her sister and the Plaintiff's son were sitting. She leaned up against the front door. At that time, they heard footsteps coming up the front porch and the Defendant kicked in the front door. The Plaintiff was behind the door and the Defendant did not see her. He went through the house carrying a gun looking for her. The Plaintiff then ran from the residence and hid behind a tree in the pasture. The Defendant eventually left and the Plaintiff ran approximately one-quarter of a mile to the Defendant's sister and brother-in-law's home who took the Plaintiff to Sparks Regional Medical Center in Ft. Smith, Arkansas, which is ap-proximately ten (10) miles from Muldrow, Oklahoma.

The Defendant pled guilty to shooting with intent to kill. In the summary of the facts of the plea of guilty, the Defendant stated that he shot the Plaintiff with a .22 rifle. This was a blind plea agreement and on May 2, 2000, the Defendant was sentenced to a term of twenty (20) years imprisonment. The Defendant had previously been convicted of two felony crimes, which included involuntary manslaughter and obtaining money by false pretenses. This Court is at a loss as to why a case of this nature, not terribly complicated factually, would languish in the state district court for almost three years while the Defendant was out on bond. Plaintiff testified that on their 25th wedding anniversary trip, the Defendant beat her and left her in the streets of Cancun.

The Plaintiff underwent emergency surgery upon arrival at the hospital. She remained in the hospital for approximately one week after this incident. The hospital bill totaled $10,998.08. A copy of this statement was presented to the Court. The Plaintiff testified that she incurred other medical expenses which, including the hospital bill, amounted to approximately $20,000. However, she is unable to document the other medical bills. The Plaintiff further testified that her average monthly salary is $5,000. She was not able to work for three months following this incident. Thereafter, she was not able to return to the real estate business. After being able to return to work, the Plaintiff worked for a dentist in Ft. Smith, Arkansas, where she earned $6 per hour. Approximately one year later, the Plaintiff and her son moved out of state. Last year, the Plaintiff earned $48,000.

When this incident occurred, Plaintiff's life was tragically disrupted. The Defendant taunted the Plaintiff by driving by her parents' home, where she was staying after this incident, and honking. The Plaintiff was afraid to walk in front of any window and usually crawled past any win-

dow. The Plaintiff suffered great embarrassment in this small community where she had lived for thirty (30) years. The Plaintiff had to take sleeping pills and antidepressants for a while following this incident. The Plaintiff testified that had this incident not occurred, she would have stayed in the Sequoyah County area.

On May 7, 1998, the Plaintiff filed a civil action in Sequoyah County where she sought actual damages in excess of $10,000, a sum in excess of $10,000 for emotional distress and other damages, punitive damages in an amount in excess of $10,000 and recovery of attorney fees.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

## CONCLUSIONS OF LAW

 Debt for wilful and malicious injury to another is nondischargeable. 11 U.S.C. § 523(a)(6). The burden of proof is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Supreme Court determined the scope of the "wilful and malicious injury" exception. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Supreme Court noted: "[t]he word 'wilful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes the deliberate or intentional injury, not merely a deliberate or intentional act which leads to injury." *Id.* The Supreme Court held that debts arising from reckless or negligently inflicted injuries are not within the exception of § 523(a)(6). *Id.* Debts arising from assault and battery are considered wilful injuries under § 523(a)(6) absent legal justification or excuse. *Shaw v. Shaw (In re Shaw)*, 210 B.R. 992, 1003 (Bankr. W.D.Mich.1997) (citing *Smith v. Pitner (In re Pitner)*, 696 F.2d 447, 449 (6th Cir. 1982)); *see also In re Herring*, 193 B.R. 344 (Bankr.N.D.Ala.1995).

 This Court has jurisdiction to enter monetary judgments in adversary proceedings brought to determine dischargeability of debts. This Court will follow the decisions of the Judges of the Northern District of Oklahoma, which state:

Debtor cites *First Omni Bank, N.A. v. Thrall (In re Thrall)*, 196 B.R. 959, 962–73 (Bankr.D.Colo.1996) (hereinafter, *"Thrall,"*), in support of his Motion. In *Thrall*, the court held that bankruptcy courts lack jurisdiction to enter money judgments in connection with dischargeability proceedings. Although the court in *Thrall* made a well-reasoned argument in support of its position, the decision espouses a minority view.

Other courts, including the United States Courts of Appeals for the Second, Sixth, Seventh, and Ninth Circuits, have held that a bankruptcy court has jurisdiction to enter a money judgment against a debtor in connection with a dischargeability action. *See Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017–18 (9th Cir.1997); *Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159, 165–65 (sic) (2nd Circ. [Cir.]1995); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965–66 (6th Cir. 1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1507–08 (7th Cir.1991). Courts have reasoned that the equitable jurisdiction of the bankruptcy court which indisputably extends to determination of the dischargeability of a debt cannot be separated from "the function of fixing the amount of the nondischargeable debt." *Snyder v. Devitt (In re Devitt)*, 126 B.R. 212, 215 (Bankr. D.Md.1991), *cited with approval in Cowen v. Kennedy*, 3 [108] F.3d at 1017–18 *and Longo v. McLaren*, 3 F.3d at 966. Other courts have recognized that the bankruptcy court's jurisdiction to enter money judgments in connection with dischargeability proceedings is in accord with the "rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought

before them, they will decide all matters in dispute and decree complete relief." *N.I.S. Corp. v. Hallahan,* 936 F.2d at 1508, *quoting Alexander v. Hillman,* 296 U.S. 222, 242 [56 S.Ct. 204, 211, 80 L.Ed. 192] (1935). This Court declines to adopt the minority position which would limit the jurisdiction of the bankruptcy court and would create piecemeal litigation in multiple forums for parties seeking a complete resolution of their dispute. *Builders Steel Co. v. Heidenreich (In re Heidenreich),* 216 B.R. 61 (Bankr. N.D.Okla.1998) (J. Michael) (quoting *Valley Nat'l Bank v. Bales,* Adv. No. 97–0271–R (Bankr.N.D.Okla. November 28, 1997) (J. Rasure)); *see also In re Valencia,* 213 B.R. 594, 595 (D.Colo.1997).

■ The Court finds that this incident was caused by the gross negligence and/or the intentional act of the Defendant. The Court is searching for an appropriate description of the Defendant's conduct and the only words which even come close to describing the Defendant's conduct are heinous, atrocious and despicable. The Defendant acted intentionally and with malice toward the Plaintiff. It is clear that the Defendant entered this house by force to try to kill his wife and possibly injure others in the household. This cowardly conduct of the Defendant could have easily risen to the level of a homicide.

■ As discussed earlier, what is somewhat troublesome to the Court is how the Defendant remained out on bond for almost three years when he had two previous felony convictions and also considering the brutal nature of this crime. For the former wife to have to undergo his constant harassment during this period of time certainly impacts this Court's consideration of damages to be awarded the Plaintiff. Clearly, the Defendant intended the injury when he shot at the Plaintiff. As a result, the Court finds that the Plaintiff should be awarded damages in the following amounts: $20,000 for medical expenses; $15,000 for lost income in the

three months following this incident wherein the Plaintiff was not able to work; and $30,000 in lost income for the next year in which she would have had income amounting to approximately $60,000 and was only able to earn $6 per hour. Further, the Court finds that the Plaintiff is entitled to $100,000 in damages for emotional distress. Since these damages arise from a wilful and malicious injury, they are nondischargeable.

■ Next, the Court will determine whether the Plaintiff is entitled to punitive damages. In order to determine whether punitive damages are appropriate, the Court must look at Oklahoma law. Okla. Stat.Ann. tit. 23, § 9.1 (West Supp.2000) provides:

A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, give damages for the sake of example and by way of punishing the defendant based upon the following factors: the seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and of its excessiveness; the attitude and conduct of the defendant upon discovery of the misconduct or hazard; in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others, or an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary dam-

ages in an amount not to exceed the greater of:

1. One Hundred Thousand Dollars ($100,000.00); or

2. The amount of actual damages awarded.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured,

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in an amount not to exceed the greater of:

a. Five Hundred Thousand Dollars ($500,000.00),

b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court in the State of Oklahoma for the same conduct by the defendant or insurer.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or

2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans,

the jury, in a separate proceeding conducted after the jury has made such finding and awarded such damages, may award exemplary damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section.

E. In determining the amount, if any, of exemplary damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

■ Punitive damages in Oklahoma have been discussed in *Bryan v. Manley (In re Manley)*, 135 B.R. 137, 146 (Bankr. N.D.Okla.1992) as follows:

In Oklahoma, at least, punitive damages may be imposed only on a defendant who is shown to have acted with 'evil intent' or with 'such disregard of another's rights, as is deemed equivalent to such intent,' *Mitchell v. Ford Motor Credit Company*, 688 P.2d 42, 45–46 and n. 8 (Okl.1984). They are 'a tool to deter the wrongdoer ... for society's benefit and not the litigating party's ... allowed after the trier of fact determines the guilt of the transgressor of acts not tolerated by society,' *Slocum v. Phillips Petroleum Company*, 678 P.2d 716, 719 (Okla.1983, reh. den. 1984). They are meant 'to stop *future* wrongdoing' (emphasis original), *Poolaw v. City of Anadarko, Okl.*, 738 F.2d 364, 367 (10th Cir. 1984), cert. den., 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985), limited on other grounds by *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1445 n. 6 (10th Cir.1988), by acting 'as a restraint upon the transgressor and as a warning and example to deter him and others from committing similar offenses in the future,' *Amoco Pipeline v. Montgomery*, 487 F.Supp. 1268, 1272 (W.D.Okl.1980). They are not lightly imposed-thus, the amount of punitive damages may exceed the amount of actual damages (as in this instance) only if the court determines independently of the jury that the defendant's reprehensible conduct is shown

by 'clear and convincing evidence,' 23 O.S. § 9. In these respects, punitive damages function somewhat like criminal penalties, although it may be said that the State acts indirectly, through agency of private plaintiffs, *Pacific Mutual Life Insurance Company v. Haslip,* [499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)] *supra, Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* [492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)] *supra.*

Clearly in this case, the Defendant committed a serious act which was a hazard to the public. He acted intentionally and with malice. The Court finds that an award of punitive damages would be appropriate under Oklahoma law. The Court hereby awards the Plaintiff $100,000 in punitive damages. Since these damages arise from the wilful and malicious injury to the Plaintiff, the Court finds that they are also nondischargeable.

IT IS THEREFORE ORDERED that judgment is hereby entered for the Plaintiff in the amount of $165,000 in actual damages and $100,000 in punitive damages.